FUERTES, DEMANDANTE Y APELADO, *v.* NOGUERAS ET AL., DEMANDADOS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de Humacao en pleito sobre reivindicación.

No. 2720.—Resuelto en julio 19, 1923.

COMPRAVENTA DE FINCA ARRENDADA—POSESIÓN CIVIL—ESCRITURA Y ENTREGA DE LA COSA VENDIDA.—Cuando una persona compra una finca por escritura pública, aunque inmediatamente la deje en arrendamiento al mismo vendedor, la posesión civil se transfiere del vendedor al comprador. La posesión continuada del arrendatario es la posesión del arrendador. El arrendatario puede considerarse que es un mero agente del dueño.

REIVINDICACIÓN—TÍTULO—POSESIÓN DEL DEMANDANTE—PRUEBA.—Cuando un demandante acredita tener su título desde una época remota, desde 1902 en el presente caso, así como los actos continuos de posesión, tiene derecho a reivindicar, particularmente si los demandados no prueban que exista ningún error en la adquisición del título del demandante.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. F. González, M. Tous Soto y L. Muñoz Morales.*

Abogado del apelado: *Sr. A. Aponte, Jr.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Estamos sustancialmente de acuerdo con la opinión emitida por la Corte de Distrito de Humacao, la cual pasamos a transcribir:

"Este es un pleito que ha seguido Don Faustino R. Fuertes contra tres demandados, a saber: contra los esposos Don Juan Nogueras y Doña Cristina Alvarez y contra la Fajardo Sugar Growers' Association. Los hechos son los siguientes según la prueba.

"En el año 1903 Don Manuel González Fernández compró a Don Santiago R. Palmer una finca denominada 'CERCADO MALDO-NADO', compuesta en aquella fecha de 35 cuerdas 190 milésimas. A los diez días murió este señor González y le sucedieron su viuda e hijos, quienes inscribieron el derecho hereditario sobre dicha finca. Poco después de esta inscripción practicaron los interesados las operaciones testamentarias de su causante y se adjudicó esta finca a Doña Clementina Lugo y Calzada, en unión de varias fincas más, como pago de su haber. Por último en 2 de octubre de 1912 la Doña Clementina le vendió todas ésta fincas, y entre ellas el 'Cercado Maldonado' que motiva el presente litigio, a Don Faustino R. Fuertes.

"Bueno es advertir que el mismo señor Palmer, que había vendido a Don Manuel González el 'Cercado Maldonado' de que se ha hecho mención, dió poder a don Emilio Cuadra para venderle a Don Francisco Noya y esposa una porción de cien (100) cuerdas, que habría de segregar de una finca llamada 'Cercado Torres' o 'Maizales.'

"Hecho este poder, el Don Emilio Cuadra le vendió a los esposos Noya las cien (100) cuerdas aludidas, segregándolas del 'Cercado Torres.'

"Ahora bien, el 'Cercado Maldonado' y el cercado 'Torres' eran dos fincas distintas e independientes, según el registro y según los planos y la realidad de los hechos.

"Resulta que cuando Don Manuel González compró, lo mismo que cuando Noya también compró, todas estas fincas estaban poseídas por

Don Faustino R. Fuertes, y cuando se fueron a segregar las cien cuerdas de Noya, esta segregación se hizo tomando de la finca 'Cercado Torres,' las cuerdas indispensables, acto que realizó el agrimensor señor Juan A. Dávila.

''Todavía en este tiempo seguían todas las fincas poseídas en arrendamiento por el Sr. Fuertes y hasta allá por el año 1904 o 1905, no entregó dicho señor Fuertes la finca de Noya al nuevo arrendatario Don Gustavo Preston. Y cuando él hizo entrega de esta finca entregó solamente las cien cuerdas y nunca el 'Cercado Maldonado', el cual conservó por algún tiempo más.

''Algo después don Faustino Fuertes entregó también las fincas que le quedaban y que pertenecían a la Sucesión González, por haber muerto Don Manuel González, su causante.

''Esto fué allá por el año 1905. En 1912, el demandante Faustino Fuertes compró todas estas fincas. Pero las dejó en arrendamiento a los mismos dueños. No necesitó inspeccionarlas porque las conocía desde hacía más de veinte años. Y resultó que en 1913 cuando fué a tomar posesión de dichas fincas, se halló con que le faltaba el 'Cercado Maldonado', el cual se encontraba poseído por la Central 'San Cristóbal' que en aquella fecha estaba en la Corte Federal bajo un procedimiento de quiebra.

''Bien está que consignemos ahora que la finca de Noya fué vendida por este señor a la 'Central San Cristóbal' en 1911; pero en vez de aparecer cien cuerdas aparecieron ciento treinta y pico de cuertas, o sean las del 'Cercado Maldonado' y las cien cuerdas de Noya. Esto dió lugar a que el Registro de la Propiedad de Humacao se negase a inscribir la venta a favor de la Central 'San Cristóbal' en cuanto al exceso, apareciendo clara y distintamente en dicho registro: 'Que quedaba denegada la inscripción del exceso de las treinta y pico de cuerdas, porque no aparecían dentro de las mismas colindancias y porque era una diferencia demasiado notable para pasar por alto.'

''Con esta denegatoria en el registro de la propiedad en cuanto al exceso de treinta y pico de cuerdas y apareciendo noventa y ocho cuerdas y pico inscritas, porque ya se había hecho una pequeña segregación de una cuerda y pico, la Central 'San Cristóbal' fué objeto de remate público, habiendo adquirido la buena pró en cuanto a esta finca 'Noya' la Corporación Naguabo Sugar Co., causante de Fajardo Growers' Association.

''En seguida de esto el demandante fué donde el señor Bird Arias, agente de dicha compañía, para que le entregase la finca una vez

examinada la documentación de la misma.  El señor Bird quedó en
que dicha documentación sería vista en la oficina del Lcdo. Muñoz
Morales; pero no habiendo nunca llegado a fijar día para ello, el
señor Fuertes se vió obligado a presentar una demanda en la Corte
Federal contra la Naguabo Sugar Company que fué la que inter-
vino en el remate y la que adquirió la finca que luego vendió a la
Fajardo Sugar Growers' Association.  En esta demanda se reclamaba
la misma finca que hoy se reclama, o sea el 'Cercado Maldonado.'

"En 1916 llegó a oídos del demandante que Nogueras pensaba
comprar la finca 'Noya', por cuyo motivo el señor Fuertes, valién-
dose para ello de los abogados Dexter y Aponte, le escribió una
carta notificando a Nogueras la verdad de los hechos y advirtién-
dole que él era el dueño de aquella finca nombrada 'Maldonado',
la cual habían incluído indebidamente en la finca 'Noya' y que
si se obstinaba en hacer la compra lo haría a su perjuicio y no
podría invocar la cualidad o concepto de tercero o de comprador
inocente.

"El día 27 de diciembre de 1916, o sea una semana después de
haber recibido Nogueras la carta de los señores Dexter y Aponte,
el dicho Nogueras compró a la Fajardo Sugar Growers' Association
sesenta cuerdas de la finca 'Noya', o sea lo que ellos llamaban la
parte Sur de la carretera.

"Para hacer esta escritura se partió de la base de que la finca
'Noya' tenía ciento treinta y pico de cuerdas y que la parte al Sur
de la carretera tenía sesenta y pico de cuerdas, cuando la verdad era
que solamente tenía un área de noventa y ocho cuerdas ochenta y seis
centavos toda la finca, según el Registro, y que la parte Sur de la
carretera solamente tenía un área de cuarenta cuerdas.

"La defensa de los demandados ha estribado en que la finca
'Cercado Maldonado' no ha existido nunca y que por tanto es im-
procedente la demanda.

"Pero resulta que de acuerdo con la certificación del registro
de la propiedad y de acuerdo con el plano antiguo de las fincas,
el "Cercado Maldonado' ha existido siempre, y ha existido con unas
colindancias naturales que no pueden confundirse, a saber:  Este,
un caño y el río Viejo;  Sur, Río Viejo;  Oeste, un cañito;  y al
Norte con la hacienda 'Fe' que era de Percyó, de la que la separa
un camino hoy carretera en construcción.  Y estas colindancias na-
turales de agua por todas partes menos por una son las que han
aceptado los mismos demandados en sus declaraciones como iden-
tificación.  Y si esto fuera poco el mismo señor Nogueras, en oc-

tubre 3 de 1913, al comprar la finca 'Islote Quiñones' a Don José J. Benítez acepta como colindancia del Norte de la finca que entonces compraba, de esta manera: 'Por el Norte, con el río Viejo que lo separa del 'Cercado Maldonado'; de Don Santiago R. Palmer.' 'Lo que quiere decir que aceptaba la existencia del 'Cercado Maldonado.'

"Por último, para mayor identificación, bastará examinar el exhíbit número 3 de la prueba de refutación, o sea la escritura de venta de la Sucesión González a favor de la Central 'San Cristóbal'; en mayo 15 de 1912, en la que aparece dicha sucesión González vendiendo a la dicha Central una tira de terreno de la finca Cercado Maldonado, o sea de la misma finca en litigio. Luego es evidente que si la causante de los demandados aceptó en 1913 la existencia del 'Cercado Maldonado,' no es posible ahora que lo nieguen sus sucesores en interés.

"El demandado Nogueras ha alegado en su declaración ante la corte, que él compró de buena fe, puesto que le consultó al abogado Don José Tous Soto y éste le dijo que podía comprar.

"Entendemos que esta circunstancia no favorece al demandado. El mismo señor Nogueras ha aceptado que los abogados del señor Fuertes le escribieron una carta en la que le advertían que debía abstenerse de comprar aquella finca y en la que le notificaban que la finca de Fuertes la habían incluído indebidamente en la finca de 'Noya', advirtiéndosele, además, que la finca en cuestión la tenía inscrita Don Faustino Fuertes a su favor en el Registro de la Propiedad y que había un pleito pendiente en la Corte Federal con motivo de ella. Nogueras reconoce haber recibido esta carta y a pesar de eso compra la finca, sin parar mientes en estos hechos y advertencias, que aparecían del registro de la propiedad y de la carta aludida. ¿En tales condiciones, puede estimarse la buena fe a los efectos del pago de los frutos o rentas? Desde el momento en que Nogueras fué advertido de lo que sucedía, cesó su buena fe. Véase el artículo 366 del Código Civil, que dice así:

"Es poseedor de buena fe el que posee—como propietario por virtud de un título suficiente en sus términos y cuyos defectos son ignorados por el poseedor. La posesión de buena fe cesa desde el momento en que el poseedor conoce por sí mismo los defectos del título, o mediante el juicio que estableciere el propietario de la cosa para reivindicarla.'

Y el artículo 365 del mismo Código, dice:

" 'Los frutos de la cosa no pertenecen al simple poseedor y

deben ser devueltos juntamente con la cosa al propietario de la misma que la reclame, a menos que la posesión hubiese sido de buena fe.''

''Por las razones expuestas procede declarar con lugar la demanda en todas sus partes, y si bien entiende esta corte que los demandados Nogueras y su esposa deben satisfacer el importe de los frutos civiles, la cuantía de los mismos deberá ser determinada oportunamente por un tribunal de arbitros designados por las partes y por la corte.

''Los demandados deben satisfacer las costas.

''Notifíquese a las partes para su debido conocimiento.

''Dada en Corte abierta hoy 20 de julio de 1920.

''(Fdo.)    R. Cuevas Zequeira,<br>
''<i>Juez de Distrito.</i>''

El primer señalamiento de error alegado por los apelantes es el siguiente:

''Error de hecho y de derecho al declarar que la finca descrita en el hecho segundo de la demanda, denominada 'Cercado Maldonado' es de propiedad del demandante señor Faustino R. Fuertes, quien tiene derecho a reivindicarla de los actuales poseedores.''

En todo esto se asume y declara que el demandante tiene un derecho a, pero no en, la propiedad. Dicen los apelantes:

''Con estos documentos se prueba suficientemente que Don Faustino R. Fuertes adquirió el derecho a la propiedad de la finca descrita en la escritura de venta, viniendo obligada la señora Lugo, vda. de González, a la entrega de la misma. Surge también la presunción de su derecho EN la propiedad, de su condición de señor de la misma, con acción para reivindicarla. Pero es el caso que, con la misma prueba del demandante, aparece destruída esa presunción que a favor del hecho de la tradición levanta la escritura de compraventa. . . . ;''

siendo la teoría que la posesión material nunca fué traspasada a Fuertes. Pero los autos muestran claramente y la corte inferior así lo declaró, que al vender Doña Clementina Lugo al demandante en el año 1912, éste último la dejó

en posesión dándole la finca en arrendamiento que vencería en 1914.

Ahora bien, cuando una persona compra una finca aunque inmediatamente la deja en arrendamiento al mismo vendedor la posesión civil se transfiere del vendedor al comprador. La posesión continuada del arrendatario es la posesión del arrendador. Esta es ley elemental. El arrendatario puede considerarse que es un mero agente del dueño.

Pero aún sin existir un arrendamiento, si el comprador permite al vendedor seguir en posesión, el derecho a la posesión, o la posesión civil se transfiere. Si fuera de otro modo la situación resultante sería un medio peregrino de reducir los varios períodos de prescripción los cuales hasta donde podemos ver en este caso llegarían a treinta años. Toda la cuestión está resuelta por el artículo 1365 del Código Civil, el cual es como sigue:

"Art. 1365.—Se entenderá entregada la cosa vendida cuando se ponga en poder y posesión del comprador.

"Cuando se haga la venta mediante escritura pública el otorgamiento de ésta equivaldrá a la entrega de la cosa objeto del contrato, si de la misma escritura no resultare. o se dedujere claramente lo contrario."

Puede ser que, prescindiendo de las excepciones mencionadas en el propio artículo, la presunción de la entrega cuando existe una escritura formal no es rebatible, pero no tenemos que resolver esa cuestión en este caso. Hubo una escritura formal, una inscripción en el registro y el debido arrendamiento. El artículo 446 del Código Civil puede también tener alguna aplicación y es como sigue:

"Art. 446.—Los actos meramente tolerados y los ejecutados clandestinamente y sin conocimiento del poseedor de una cosa, o con violencia no afectan a la posesión."

Además, un contrato perfeccionado sin una escritura for-

mal probablemente produciría el mismo resultado. *López
v. Lizardi,* 27 D. P. R. 755.

Los demás señalamientos de error son una tentativa por
parte de los apelantes para demostrar que la escritura de
su causante comprendía la finca en cuestión. Los apelan-
tes admiten substancialmente en apelación como revelan los
autos y la corte declaró probado que ellos están en pose-
sión de la finca que se trata de reivindicar, aunque apa-
rentemente negaron esto en su contestación. Los viejos
planos, las escrituras, la prueba, todo tiende vigorosamente
a acreditar que el "Cercado Maldonado" era una finca dis-
tinta del "Cercado Torres." La prueba revela que el título
del causante procedía del "Cercado Torres." Convenimos
con el apelado en que los agrimensores de los demandados
sin obrar de mala fe podían estar equivocados y despista-
dos por sus instrucciones.

Varios predecesores en derecho de los demandados re-
conocieron la existencia del "Cercado Maldonado," com-
prando uno de ellos específicamente una pequeña faja de
terreno perteneciente a esa propiedad. Como indica la
corte inferior, las colindancias aquí son naturales y casi
inequívocas, y según sugiere el apelado, si el vendedor de
los demandados en posesión de toda la propiedad hubiera
querido traspasar una parte del "Cercado Maldonado" él
lo hubiera mencionado expresamente, o descrito sus colin-
dancias.

Independientemente de todo esto el demandante probó un
título debidamente inscrito en el año 1902. Demostró que
los demandados estaban en posesión del mismo y en contra
del demandante, y tal posesión adversa continuó no obs-
tante tener toda clase de aviso. Los demandados no nos
han demostrado que exista ningún error en el origen del
título del demandante o que tengan ellos un derecho su-
perior.

Convenimos con los apelantes, sin embargo, en que no existe ninguna razón para anular el título de los deman. dados excepto en tanto esté en conflicto con el título del demandante. Debe, por tanto, modificarse la sentencia en este sentido, y así modificada, confirmarse.

*Confirmada la sentencia apelada; modificándola.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Aldrey, Hutchison y Franco Soto.